UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
**FRANKLIN ARIAS**

                                              **Plaintiff,**

        -against-

Case No.: _____

**GUTMAN, MINTZ, BAKER & SONNENFELDT, P.C., and
1700 DEVELOPMENT CO. (1500), INC.**

                                              **Defendants.**
-------------------------------------------------------------------X

## ORIGINAL COMPLAINT AND JURY DEMAND

      Plaintiff Franklin Arias brings suit against Defendant GUTMAN, MINTZ, BAKER & SONNENFELDT, P.C., a debt collection law firm, for its violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, New York State General Business Law § 349, New York State Judiciary Law § 487, and for conversion, and against Defendant 1700 DEVELOPMENT CO. (1500), INC. for conversion alone.

      In brief, Defendants restrained (and attempted to seize) Plaintiff's statutorily exempt funds, objected to Plaintiff's notice of exemption without a reasonable basis to do so, and refused to withdraw the objection in the face of indisputable documentary evidence that the funds were entirely statutorily exempt, all for the purpose of attempting to coerce Plaintiff to make payments from an exempt source and in hopes that Plaintiff would default at the hearing on the exemption objection.

### A.   JURISDICTION AND VENUE

1.    The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"). Jurisdiction of the Court arises under 28 U.S.C. § 1331 because this dispute involves predominant issues of

federal law under the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

2. Venue in this District is proper because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Bronx, New York.

**B.   PARTIES**

3. Plaintiff Franklin Arias is seventy years old and currently resided in New York County, New York.

4. Defendant Gutman, Mintz, Baker & Sonnenfeldt, P.C. ("GMBS") is a domestic professional corporation and a debt collection law firm, organized under the laws of the State of New York.

5. GMBS is a debt collection law firm, regularly filing collection lawsuits on behalf of putative creditors, making and receiving collection phone calls, and sending out collection letters.

6. GMBS regularly collects consumer debts alleged to be due to another, and that is its primary purpose.

7. GMBS is thus a "debt collector" as defined by the FDCPA.

8. Defendant 1700 Development Co. (1500), Inc. is a domestic business corporation organized under the laws of the State of New York.

**C.   STATEMENT OF FACTS**

*The Underlying Default Judgment Obtained Against Mr. Arias*

9. In 2006, Mr. Arias resided at 1500 Popham Avenue, Apartment 1K, Bronx, New York, in a building owned by Defendant 1700 Development Co. (1500), Inc. ("the Landlord Defendant").

10. That same year, Mr. Arias moved out of the apartment and his daughter moved in. His daughter was to pay the rent, but, at some point, she failed to pay two months of rent.

11. Mr. Arias was unaware of his daughter's failure to pay rent.

12. In 2006, GMBS on behalf of the Landlord Defendant sued Mr. Arias in a breach of lease action in Bronx County Civil Court ("the collection lawsuit") styled *1700 Development (1500) v. Franklin Arias,* Index No. 50430/06-BX.

13. Mr. Arias was never served with the collection lawsuit.

14. Because he was never served with the collection lawsuit, Mr. Arias did not file an answer.

15. Consequently, on or about September 28, 2006, GMBS, on behalf of the Landlord Defendant, obtained a default judgment for $4,656.15.

16. Approximately eight years later, on or about December 1, 2014, GMBS executed on the judgment on behalf of the Landlord Defendant by issuing an "Information Subpoena With Restraining Notice" ("the restraint"), to Bank of America where Mr. Arias had a checking account ("the account"). *See Exhibit A,* the restraint.

### *The Restrained Account Was Entirely Exempt*

17. Mr. Arias receives approximately $785 per month in Social Security Retirement Income ("SSRI") in 2014.[1]

18. The SSRI payments are directly deposited by the Social Security Administration into Mr. Arias' bank account at Bank of America.

19. All of the money in Mr. Arias' Bank of America account is SSRI directly deposited by

---

[1] In 2015 the SSRI payment increased slightly to $798.

3

the Social Security Administration.

20. As such, all of the funds in the account were entirely exempt from restraint and garnishment.

21. The Social Security Act, 42 U.S.C. 407 (the "SSA"), states that no money paid or payable under the Act "shall be subject to execution, levy, attachment, garnishment, or other legal process."

22. Further, the United States Department of the Treasury introduced regulations ("the regulations") that went into effect on May 1, 2011, providing that a financial institution must allow an account holder access to a "protected amount", which is the lesser of the sum of all benefit payments posted to the account in the last two months, or the balance in an account when the account review is performed. 31 CFR 212.3.

23. However, the "protected amount" does not limit an individual's right to assert further exemptions from garnishment or restraint. 31 CFR 212.8(a).

24. The regulations also do not preempt State laws governing garnishment practices, allowing States to further protect federal benefit payments from freezes or garnishments. 31 CFR 212.9(b).

25. Moreover, in 2008, New York State enacted the Exempt Income Protection Act ("EIPA"), to prevent widespread problems involving the restraint of bank accounts containing exempt funds.

26. EIPA protects statutorily exempt income from restraint, "freeze", or levy.

27. EIPA also expedites and standardizes the process for the release of restrained exempt funds.

28. Under EIPA, when a judgment debtor's bank account is restrained pursuant to a New

York restraining notice, the judgment debtor may claim that the funds in the restrained account are exempt by completing an Exemption Claim Form.

29.     Under EIPA, a judgment creditor must provide such an Exemption Claim Form to the judgment debtor's banking institution along with any restraining notice.

30.     An Exemption Claim Form must be mailed to the judgment debtor by her banking institution within two days of the banking institution's receipt of the restraining notice from the judgment creditor.

31.     To facilitate the prompt release of an account containing exempt funds, the Exemption Claim Form instructs judgment debtors to submit "proof" that the funds in their account are exempt. N.Y. CPLR 5222a(b)(2).

32.     Proof of an exemption can "include an award letter from the government, an annual statement from your pension, pay stubs, copies of checks, bank records showing the last two months of account activity, or other papers showing that the money in your bank account is exempt". *Id.*

33.     When a judgment debtor sends a judgment creditor an Exemption Claim Form accompanied by such "information demonstrating that all funds in the account are exempt", the restraint is deemed void and the judgment creditor must instruct the banking institution to release the account within seven days of the postmark on the envelope containing the Exemption Claim Form. N.Y. CPLR 5222a(c)(4).

34.     Furthermore, when an account contains funds from exempt, unknown, and/or non-exempt sources (*i.e.*, "commingled funds"), EIPA provides that "the judgment creditor shall apply the lowest intermediate balance principle of accounting" and "shall instruct the banking institution to release the exempt money in the account" within seven days of the postmark on the envelope

containing the exemption claim form. *Id.*

35. In other words, EIPA provides protections for exempt funds even when they are commingled with non-exempt funds.

36. A judgment debtor loses no federal or state exemption protections under EIPA by commingling funds in an account. In any event, commingling could not be an issue as to Mr. Arias as all of the money in Mr. Arias' Bank of America account came solely from exempt SSRI payments.

37. If a judgment debtor submits an Exemption Claim Form demonstrating that a restrained account contains exempt funds and the judgment creditor still fails to properly release the account or exempt funds, "the judgment creditor shall be deemed to have acted in bad faith and the judgment debtor may seek a court award of the damages, costs, fees and penalties" as provided for. N.Y. CPLR 5222a(c)(4).

38. If a judgment debtor submits an Exemption Claim Form asserting that a restrained account contains exempt funds, a judgment creditor may object to the claim, provided it "demonstrate[s] ***a reasonable belief*** that [the] judgment debtor's account contains funds that are not exempt from execution and the amount of such nonexempt funds". N.Y. CPLR 5222a(d) (emphasis added).

39. If a judgment creditor objects to an exemption claim, its motion papers must include an affirmation or affidavit in support of the motion that "demonstrate[s] a reasonable belief that [the] judgment debtor's account contains funds that are not exempt from execution and the amount of such nonexempt funds…The affirmation or affidavit shall not be conclusory, but is required to show the factual basis upon which the reasonable belief is based". *Id.*

40. If a judgment creditor objects to a judgment debtor's exemption claim, a "hearing to

6

decide the motion shall be noticed for seven days after service of the moving papers". *Id.*

41. At the hearing, "the burden of proof shall be upon the judgment creditor to establish the amount of funds that are not exempt". *Id.*

42. As stated above, Mr. Arias used the account only to receive direct deposits of Social Security Retirement Income ("SSRI") from the Social Security Administration.

43. Hence, all the funds in the account were exempt at the time of the restraint.

*Defendants Improperly Restrained the Account and Opposed Its Release Despite Knowing the Funds Therein Were Exempt*

44. GMBS signed an Information Subpoena with Restraining Notice dated December 1, 2014 ("restraining notice").

45. On or about December 5, 2014, Bank of America received the restraining notice.

46. The same day, on or about December 5, 2014, Bank of America sent Mr. Arias a notice of the restraint along with the Exemption Claim Form.

47. On or about December 15, 2014 Mr. Arias received the notice of restraint from Bank of America.

48. On the same day he received the notice of restraint, Mr. Arias went to Bank of America, and asked the bank to contact GMBS to inform them that the only funds in his account were from SSRI.

49. Through Bank of America, Mr. Arias faxed bank statements to GMBS, the agent of the Landlord Defendant, documenting that his account contained only exempt SSRI funds.

50. That same day, on or about December 15, 2014, Mr. Arias called GMBS to let them know the bank had faxed to GMBS bank statements documenting that he only had Social Security funds in the account.

51. Despite having documentary proof that the all of funds restrained were exempt SSRI

funds, GMBS told Mr. Arias that he owed the debt and that GMBS *would remove the restraint only if Mr. Arias sent them a payment*.

52. Mr. Arias told GMBS during the telephone call that he could not afford to make a payment.

53. GMBS responded by telling Mr. Arias that he would have to go to court to attempt to remove that restraint.

54. GMBS' conduct and representations were unconscionable, as well as false, deceptive and misleading.

55. It was unlawful for GMBS to restrain the bank account because the funds contained therein were entirely exempt from restraint or execution.

56. GMBS had documentary proof that all of the funds in the account were exempt.

57. Therefore, Mr. Arias should not have had to go to court to oppose GMBS' objection.

58. Further, Defendant GMBS, on behalf of its client, the Landlord Defendant, refused to release Mr. Arias's bank account or the exempt funds therein after he told them over the phone and sent proof by fax that his account contained solely exempt funds.

59. On December 19, 2014, Mr. Arias mailed GMBS a completed Exemption Claim Form indicating that the funds in the account were all from Social Security Retirement, with copies of a transaction history dating back to February 2014 showing that the only deposits to the account were direct deposits of Social Security Retirement funds, in accordance with the NYS EIPA. *See Exhibit B,* the December 19, 2014 Exemption Claim Forms.

60. GMBS, on behalf of the Landlord Defendant, responded to Mr. Arias' December 19, 2014 exemption claim by objecting, requesting a hearing and filing a motion for an order with an affirmation in support of the motion dated December 22, 2014 ("the objection"). *See Exhibit C*,

8

the December 22, 2014 exemption objection.

61. GMBS had no good-faith basis for objecting to the exemption claim, and did so in order to abuse and intimidate Mr. Arias into agreeing to send them payments from his exempt funds, or in hopes that Mr. Arias would default at the hearing on the exemption objection.

62. On information and belief, it is the pattern and practice of GMBS to object to such exemption claims whether or not they have a good faith basis for doing so, in order to abuse and intimidate consumers into settlements and/or defaults.

63. Indeed, the objection filed by GMBS demonstrates it is just a boilerplate motion. Other than changing the name of the consumer, the style of the case, etc., the actual "substance" of the objection is boilerplate language that could apply to any objection to an exemption claim, with no facts specifically tied to the dispute at issue. The boilerplate nature of the objection suggests GMBS files the objections as a matter of course in response to exemption claims by consumers.

64. GMBS bases its objection the to Mr. Arias objection by that Mr. Arias did not "provide the proper documentation in support of his Exemption Claim Form, because Mr. Arias "failed to provide . . . bank records starting from a zero balance," and because Mr. Arias "failed to provide any documentation that he never commingled the account with non-exempt funds." *Id.* December 2014 Affirmation Pars. 14-15.[2]

65. GMBS' objection contains contradictions and misrepresentations of law.

66. For example, GMBS' objection properly cites and quotes NY CPLR 5222a(d), the

---

2 The full text of the of the cited paragraphs to the objection are as follows:

> 14. The Defendant does not provide the proper documentation in support of his Exemption Claim Form. The Defendant failed to provide any bank records starting from a zero balance for the Plaintiff to review to determine if the Defendant's account contains solely social security. Without any of those documents, it is not possible for the Plaintiff to determine what funds, if any, contained in the Bank of America account are exempt as social security.

> 15. Even if the restrained account contains social security, the Defendant failed to provide any documentation that he never commingled the account with non-exempt funds.

subsection that provides the standard for a proper objection to exemption claims under the EIPA.

67. However, GMBS' objection also cites two cases from 2002 and 2003, before EIPA was implemented, in support of an incorrect legal contention, that otherwise exempt funds are made non-exempt when commingled with personal funds. *See Exhibit D*, December 2014 Affirmation Par. 12.

68. EIPA does not require a specific type of proof of income source, or period of time the proof must cover.

69. Rather, EIPA provides several examples of documentation sufficient to prove that an account contains exempt income, including the last two months of account transaction history.

70. Mr. Arias provided *eleven* months of account transaction history demonstrating that the only deposits to the account were made by the Social Security Administration. Moreover, those deposits totaled more than the balance in the account at the time of the restraint, further demonstrating that all the funds in the account at that time were from the Social Security Administration.

71. GMBS' objection is abusive because it represents (falsely) to the least sophisticated consumer that that the burden is on the consumer to provide certain documentation when in fact the burden is on the debt collector to provide and affirmation or affidavit to "demonstrate a reasonable belief that such judgment debtor's account contains funds that are not exempt from execution" and further that the affirmation or affidavit "shall not be conclusory, but is required to show the factual basis upon which the reasonable belief is based." NY CPLR 5222a(d).

72. More to the point, GMBS itself attached as an exhibit to its own objection the completed execution form ***with the 11 months of bank statements*** that Mr. Arias sent to GMBS. *See* Exhibit C. (This further suggests the boilerplate nature of GMBS' objections to exemptions).

73. GMBS' objection contained no factual basis for a belief that Mr. Arias' account contained any non-exempt funds, and indeed contained documents demonstrating the opposite.

74. Rather GMBS' objection stood on the above-listed disputes regarding the commingling of funds, and the inadequacy of the proof provided.

75. Hence, GMBS' objection – and refusal to withdraw the objection – was improper because:

    a. There was no commingling of exempt and non-exempt funds in Mr. Arias' account as all of the funds in the account was exempt;
    b. Regardless of whether there was any commingling, commingling does not make otherwise exempt funds non-exempt;
    c. Mr. Arias was not required to provide statements "starting from a zero balance" under New York State law, but instead was recommended under EIPA to provide the last two months of account transaction history; and
    d. Mr. Arias provided GMBS' with more proof of his exemption than is suggested under EIPA.

76. Subsequently, Mr. Arias appeared *pro se* at a hearing held pursuant to CPLR 5222a on January 6, 2015 in Bronx County Civil Court.

77. Mr. Arias told the presiding judge that all of the income in his account was from Social Security.

78. At that point, GMBS asked Mr. Arias to step into the hall to discuss the case.

79. GMBS asked Mr. Arias to see the documents he had with him.

80. Upon information and belief, these documents were the same bank transaction history documents that Mr. Arias had previously transmitted twice to GMBS, once via fax, and once attached to the Exemption Claim Form.

81. After showing GMBS the documents, Mr. Arias and Defendant returned to the courtroom and GMBS, on behalf of their client the Landlord Defendant, withdrew the motion and stipulated

to a release of all restrained funds.

82.     In short, GMBS released Mr. Arias' Social Security funds immediately after looking at his papers in court on January 6, 2015, though they were in possession of all of the same documents, and knew, or should have known, several weeks before that all of the funds in his account were exempt.

### Defendants' Conduct Inflicted Damages on Mr. Arias

83.     The actions of GMBS, on behalf of their client the Landlord Defendant, inflicted damages upon Mr. Arias, including emotional distress that affected his activities of daily living.

84.     When Mr. Arias received the notice of restraint in the mail from the bank he "felt destroyed." Mr. Arias could not sleep well for the whole month that his funds were restrained. He would wake up throughout the night with anxiety about the restraint and worried about how he would recuperate the lost funds. Even after the funds were eventually released, Mr. Arias continued to have difficulty sleeping, worried that perhaps again the Defendants would restrain his exempt social security payments.

85.     Mr. Arias was fixated on the restraint on his bank account and how he was going to be able to get his money back. He became so distracted by thinking about this, almost in a daze, that sometimes he would even blow through a traffic sign, not even having seen it. In fact, Mr. Arias, who had not received a ticket in 10 or 20 years, got three tickets in short order because he was so distracted and fixated on the garnishment of his social security money.

86.     Mr. Arias was also damaged in not having access to his exempt funds for approximately a month. He lost time and incurred expenses in having to challenge a restraint that should never have been issue and to respond to an exemption objection for which there was no basis other than to pressure Mr. Arias to use his exempt funds to pay the default judgment, or in hopes of

Mr. Arias defaulting at a hearing on the baseless exemption objection.

### D. COUNT # 1: VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (AGAINST GMBS ALONE)

87. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

88. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); *see also Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

89. Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

90. The obligation alleged to be owed by plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative debt was incurred primarily for family, personal or household purposes, specifically for rent.

13

91. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

92. GMBS is a law firm engaged in the business of collecting debts by filing thousands of collection lawsuits on behalf of putative creditors or debt buyers; by making thousands of collection phone calls; and by sending out thousands of collection letters. GMBS regularly collects consumer debts alleged to be due to another, and that is its primary purpose. GMBS is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

93. The actions of GMBS enumerated in the above statement of facts constitute an attempt to collect a debt, or were taken in connection with an attempt to collect a debt, within the meaning of the FDCPA.

94. GMBS materially violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e and 1692f. By way of example and not limitation, GMBS violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; threatening to take and actually taking an action prohibited by law; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law; and taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if the property is exempt by law from such dispossession or disablement.

### E.     COUNT 2: NEW YORK GENERAL BUSINESS LAW SECTION 349 *ET SEQ.*(AGAINST GMBS ALONE)

95.   Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

96.   New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…"

97.   An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h). An individual may also be awarded punitive damages.

98.   As enumerated above, Defendant GMBS violated N.Y. Gen. Bus. Law § 349 *et seq*. by using deceptive acts and practices in the conduct of their businesses that have broad impact on consumers at large. This includes: seeking to collect on a judgment by restraining an account (or garnishing wages) without performing any review, much less a meaningful attorney review, of whether the account sought to be restrained contains exempt funds, even after receiving a lawful notice of exemption; and opposing a lawful claim of exemption without performing any review, much less a meaningful attorney review, of whether the claim of exemption is valid.

99.   On information and belief, GMBS routinely opposes lawful claims of exemption by New York consumers, even after receiving notices of exemption—opposing such exemption claims without performing any review, much less meaningful attorney reviews, of whether the claims of exemption are valid.

100.   In the alternative, GMBS routinely opposes exemption claims knowing that there is no reasonable basis for the challenge in hopes of coercing payments from the exempt account or

that the consumer would default on the hearing date.

101.   Further, as enumerated above, GMBS violated N.Y. Gen. Bus. Law § 349 *et seq.* by using deceptive acts and practices in the conduct of their businesses.  This includes attempting to restrain and levy funds GMBS knew or should have known to be exempt, and making false statements of law and fact to the New York Civil Court and to the Plaintiff.

102.   GMBS' conduct has had an impact on many New Yorkers who have their income exemption claims objected to as a matter of course by GMBS.

103.   Indeed, the objection filed by GMBS demonstrates it is just a boilerplate motion.  Other than changing the name of the consumer, the style of the case, etc., the actual "substance" of the objection is boilerplate language that could apply to any objection to an exemption claim, with no facts specifically tied to the dispute at issue.  The boilerplate nature of the objection suggests GMBS files the objections as a matter of course in response to exemption claims by consumers.

104.   GMBS committed the above described acts willfully and/or knowingly.

105.   For the following reasons, among others, GMBS' conduct evidences a high degree of moral culpability, or is so flagrant as to transcend mere carelessness, or constitutes willful or wanton negligence or recklessness to justify a punitive damage award.  As already indicated, GMBS collected upon the putative judgment by restraining an account without performing any review, much less a meaningful attorney review, of whether the account sought to be restrained contained exempt funds, even after receiving a lawful notice of exemption that was plainly sufficient to release the account; and opposing such lawful claim of exemption as a matter of course without performing any review, much less a meaningful attorney review, whether the claim of exemption was valid.

106.   GMBS' wrongful and deceptive acts caused injury and damages to Plaintiff.

107. As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 *et seq*, Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive relief against GMBS, and to recover actual, treble, and punitive damages, together with costs and attorney's fees.

### F. COUNT 3: CONVERSION (AGAINST ALL DEFENDANTS)

108. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

109. Defendants are jointly and severally liable for conversion. The Landlord Defendant, as the party in the collection lawsuit, acted through its agent, GMBS, in converting Mr. Arias' money. GMBS was acting within the course and scope of the authority given to it by the Landlord Defendant. For purposes of the conversion claim, the acts of GMBS are the actions of the Landlord Defendant.

110. The elements of conversion in New York State include: 1) having a possessory interest in property; and 2) having the possessory interest taken or interfered with by another in a manner that is contrary to the possessor's rights.

111. Property subject to conversion includes readily identifiable funds from a bank account.

112. Defendants intentionally and without authority, assumed and exercised control over Mr. Arias' funds, interfering with his right to possession of the same, by restraining his account; and the exempt funds therein.

113. Defendants' improper restraint of Mr. Arias' money, which harmfully interfered with Mr. Arias' rights to control his own property, constitutes conversion.

114. For the reasons stated in the statement of facts, and under Counts 1 and 2, Defendants' conduct is gross, wanton or deliberate and demonstrates a high degree of moral culpability. The conduct demonstrates malice, insult, and/or willful or reckless disregard of Mr. Arias' rights, or other aggravated acts. Defendants' conduct evidences a high degree of moral culpability, or is so flagrant as to transcend mere carelessness, or constitutes willful or wanton negligence or recklessness to justify a punitive damage award.

115. For these reasons, Plaintiff is entitled to punitive damages, in addition to actual damages. Actual damages include, *inter alia*, the loss of use of money for the period Defendants wrongfully exercised dominion and control over Plaintiff's funds, and consequential damages resulting therefrom. Plaintiff suffered serious mental distress and disruption of his daily life.

### G. COUNT 4: NEW YORK JUDICIARY LAW § 487 *ET SEQ* (AGAINST GMBS ALONE)

116. New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "wilfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

117. GMBS violated § 487 by restraining an account without performing any review, much less a meaningful attorney review, of whether the account sought to be restrained contained exempt funds, even after receiving a lawful notice of exemption that was plainly sufficient to release the account; and opposing such lawful claim of exemption as a matter of course without performing any review, much less a meaningful attorney review, of whether the claim of exemption was valid.

118. The Defendant's violations include, but are not limited to:
    a. Preparing fraudulent, deceptive, and misleading affidavits and affirmations;
    b. Misrepresenting and misstating the law regarding the Exempt Income Protection Act to the court and to Plaintiff in court filings;
    c. Using fraudulent, deceptive, and misleading affirmations in an attempt to obtain access to Plaintiff's exempt funds under false pretenses.

119. Defendant committed the above-described acts willfully and knowingly.

120. The violations of § 487 by GMBS inflicted damages for the reasons and in the manner previously indicated.

121. Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for the violations of N.Y. Judiciary Law § 487 by GMBS, and Plaintiff so seeks.

## H. JURY DEMAND

122. Plaintiff demands a trial by jury.

## I. PRAYER

123. WHEREFORE, Plaintiff requests the following relief:

   a. A declaration that Defendants have committed the violations of law alleged in this action;

   b. An order enjoining and directing GMBS to cease violating G.B.L. § 349 *et seq.*;

   c. Actual damages;

   d. Statutory damages under 15 U.S.C. § 1692k and GBL § 349;

   e. Treble damages under GBL § 349 and Judiciary Law § 487;

   f. Exemplary and punitive damages under GBL § 349 and Judiciary Law § 487, and for conversion;

   g. An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k and GBL § 349;

    h.    Prejudgment and post judgment interest as allowed by law;

    i.    All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Dated:  Brooklyn, New York
         November 30, 2015

                              Respectfully submitted,
                                 /s/

                              Ahmad Keshavarz
                              The Law Office of Ahmad Keshavarz
                              16 Court St., 26th Floor
                              Brooklyn, NY 11241-1026
                              Phone: (718) 522-7900
                              Fax:    (877) 496-7809
                              Email: ahmad@NewYorkConsumerAttorney.com

                              /s/
                              _____
                              Susan Shin
                              NEW ECONOMY PROJECT
                              121 West 27th Street, Suite 804
                              New York, NY 10001
                              Phone: (212) 680-5100
                              Fax: (212) 680-5104
                              Email: susan@neweconomynyc.org